## STANFORD VEINO *v.* THE AMERICAN SCHOONER BLAKELY.

### February 25, 1914.

1. *Admiralty—Official log-book—Entries:* The statute requires the master of a vessel making a foreign voyage to log each offense by any member of the crew for which he intends to prosecute or enforce a forfeiture, and the name of any one who ceases to be a member of the crew otherwise than by death, with the time, place, manner and cause thereof.

2. *Same—Same—Failure to log offenses—Legal proceedings—Evidence:* In legal proceedings dealing with such offenses, the record thereof should be produced or proved, failing which the court may at its discretion refuse evidence of such offenses. In case such offenses are satisfactorily proved, it is better practice to ignore failure to produce or prove log entries thereof.

3. *Same—Discharge of seaman in foreign port:* Discharge of a member of a crew in an out-of-the-way foreign port unjustifiable, except for offenses of a very serious and aggravated character.

*In Admiralty:* Libel *in rem* for wages and damages.

*G. A. Davis* and *W. T. Rawlins* for libelant.
*Holmes, Stanley & Olson* for libellee.

DOLE, J.   It has been satisfactorily shown in the trial of this case that on the 6th of March, 1911, libelant shipped as first mate of the American schooner Blakely, at Port Blakely, in the State of Washington, for a voyage to the port of Tocopilla, in Chili, South America, and return to a port of discharge in Washington, Oregon, California, or British Columbia; that the said schooner arrived in Tocopilla on the 23rd day of May, in the same year, and lay there until after July 3rd discharging her cargo; and that on the 3rd day of July the master paid off and discharged the libelant against his will and protest at the port of Tocopilla.   The libelant alleges that such discharge was without cause and in violation of the shipping articles entered into between him and the libellee, and claims wages to the amount of $520, less the amount received at the end of the voyage, and $520 for his necessary expenses during his enforced detention at Tocopilla and Valparaiso in said Chili, where he went from Tocopilla, and passage money back to the port of discharge; and alleges that he faithfully and in a skillful manner attended to his duties as mate up to the time of his discharge.

The answer denies the faithful and skillful service by libelant and alleges that on numerous occasions he slept while on watch, encouraged and aroused a spirit of insubordination in the crew; that libelant at Tocopilla absented himself from the vessel without leave and in defiance of the orders of the master, with general allegations of neglect of duty and definitely charges him with injury to the gaff of the schooner through neglect and inattention to duty, and upon the master's remonstrance, with having used violent language toward him and assaulted him, and that the libelant acquiesced in his discharge at Tocopilla.

[1] It is a noticeable feature of these proceedings that

none of the matters complained of in the defense as to neg-lect of duty, encouraging a spirit of insubordination among the crew, absence from the vessel without leave at Tocopilla, and the use of violent language toward the master and committing an assault on him, on the part of the libelant, were entered in the official log of the vessel. The law requires that the master of any vessel making a voyage from a port in the United States to any foreign port shall have an official log-book and shall enter therein "every offense committed by any member of his crew for which it is intended to prosecute or to enforce a forfeiture; . . . a statement of the conduct, character and qualifications of each of his crew or a statement that he declines to give an opinion of such particulars, . . . and the name of every seaman or apprentice who ceases to be a member of the crew otherwise than by death, with the place, time, manner and cause thereof." Rev. Stat., sec. 4290. Section 4596 of the Revised Statutes states the following offenses among others and sets forth the punishment that may be inflicted for them respectively: "Continued wilful neglect of duty at sea; . . . and assaulting any master or mate." Section 4597 of the Revised Statutes is as follows:

"Upon the commission of any of the offenses enumerated in the preceding section an entry thereof shall be made in the official log-book on the day on which the offense was committed, and shall be signed by the master and by the mate or one of the crew; and the offender, if still in the vessel, shall, before her next arrival at any port, or, if she is at the time in port, before her departure therefrom, be furnished with a copy of such entry, and have the same read over distinctly and audibly to him, and may thereupon make such a reply thereto as he thinks fit; and a statement that a copy of the entry has been so furnished, or the same has been so read over, together with his reply, if any, made by the offender, shall likewise be entered and signed in the same manner. [2] In any subsequent legal proceedings the entries hereinbefore required shall, if practicable, be produced or proved, and in default of such pro-

duction or proof the court hearing the case may, at its discretion, refuse to receive evidence of the offense."

When the charges in such matters are satisfactorily proved, it is undoubtedly the best practice to ignore the failure of the master to make the appropriate entries in his log-book and to proceed with the trial.

"Sections 4596 and 4597 show that the failure to enter facts in any log on which deduction of wages is claimed, does not absolutely prevent proof of those facts, but gives the court a discretion to reject the evidence. No doubt the general purpose of these provisions of law is such as libelant's counsel suggests, to prevent the oppression of seamen by trumped up unfounded claims of misconduct, and ordinarily, and if the facts are left in doubt, the failure to enter the facts in the log should defeat the attempted defence." *The T. F. Whiton*, 23 Fed. Cas. 873, No. 13,849.

It is difficult from the evidence offered as to the complaints by the master against the libelant, to reach a conclusion. Under such a situation the law and the precedent cited above would seem to apply, and they will be followed. The court will not further consider such evidence.

[3] The act of the master in dismissing the libelant in such an out-of-the-way port as Tocopilla, was a severe one, and could only be justified by convincing evidence, which does not appear. So far as one may judge from the evidence, the libelant was practically marooned there, the conditions being such that he, although making reasonable efforts to find a new position as mate on some vessel leaving there or Valparaiso, for the Pacific coast, was unable to do so before about the first of January, 1912, and was without funds for paying for a passage to the Pacific coast, except possibly at the time of his discharge at Tocopilla, at which time there does not appear to have been such opportunity, and even then insufficient for a first-class passage.

"Generally speaking, the causes which justify the master in discharging a seaman before the termination of the voy-

age, and especially in a foreign port, are such as amount to a disqualification and show him to be unfit for the service he has engaged for, or unfit to be trusted in the vessel. They are—mutinous and rebellious conduct, persevered in, gross dishonesty, or embezzlement, or theft, or habitual drunkenness, or where the seaman is habitually a stirrer-up of quarrels, to the destruction of the order of the vessel and the discipline of the crew. . . . Ordinarily, the law will not justify the master in dismissing a seaman for a single offense, unless it be of a very high and aggravated character, implying a deep degree of moral turpitude, or a dangerous and ungovernable temper or disposition. It looks on occasional offenses and outbreaks of passion, not so frequent as to become habits, with indulgence, and by maritime courts it is administered with lenity and a due regard to the character and habits of the subjects to whom it applies." *Smith v. Treat*, 22 Fed. Cas. 687, 688, No. 13,117.

I find that the libelant was paid off at the time of his discharge at Tocopilla; that his discharge was unjustifiable; that he remained at Tocopilla about four months under a necessary expense of 697 pesos, without being able to find a position on a vessel as first mate for return to Washington, California, or British Columbia; that he then went to Valparaiso where he remained about two months at an expense of 279 pesos before finding such a position, when he shipped as first mate on the four-masted schooner E. B. Johnson, January 1, 1912, bound to Gray's Harbor at $40 a month, arriving there in April, when he could have earned $120. While at Tocopilla he earned 60 pesos splicing wire rope. Had he continued in the Blakely on the voyage from Tocopilla to Port Townsend, where she arrived September 18, 1911, two and a half months from his discharge at Tocopilla, his wages, at $65 a month, would have amounted to $162.50. Under the general prayer for relief, I allow damages in the nature of wages at $65 a month from the time the Blakely arrived at Port Townsend, September 18, 1911, to the time the libelant arrived

at Gray's Harbor, April 1st, 1912, six months and twelve days, $415.99. It is in evidence that at Tocopilla one American dollar was worth 4.68 of Chilean money. These items may be stated in the following form:

Expenses at Tocopilla and Valparaiso 976 pesos, equal to .................................$204.27
Wages due on the Blakely from July 3 to September 18, 1911 ...................................... 162.50
Wages as damages at the same rate from September 18, 1911, to April 1, 1912, when he reached Gray's Harbor, 6 months, 12 days.................... 415.99
Wages received as first mate on the schooner E. B. Johnson...............$120.00
Amount due libelant .................. 662.76

                                    $782.76   $782.76

I find for the libelant in the sum of $662.76, with costs.